UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ANGELO SERRATO,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>Defendants. | Case No. 2:13-cv-00449-AB-GJS<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF REGARDING DEFENDANTS' DEFENSE OF FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES** |

The parties in this action agreed "that the Court will need to conduct an evidentiary hearing to resolve any factual issues necessary to address Defendants' exhaustion defense under the PLRA [Prison Litigation Reform Act, 42 U.S.C. § 1997e]." Stipulation (Dkt. No. 106) 1:22-23. An evidentiary hearing took place on January 24, 2023. Plaintiff Michael Angelo Serrato and Los Angeles County Sheriff's Department's custodian of records Deputy Adam Kennedy testified, and certain exhibits were admitted into evidence. *See* Transcript (Dkt. No. 181). Counsel made closing arguments and thereafter filed proposed Findings of Fact of Conclusions of Law. *See* Dkt. Nos. 192, 193. Both sides also filed Memoranda of Contentions of Fact and Law (Dkt. Nos. 117, 119) and Plaintiff filed an updated Memorandum that included a transcript of Deputy Kennedy's deposition. *See* Dkt. No. 191.

1.

## I. BACKGROUND

Plaintiff filed this Section 1983 action in 2013, based on events that allegedly occurred while he was detained Men's Central Jail ("Jail"). Only two of Plaintiff's claims remain: (1) a Section 1983 claim arising out of Deputy Graham's alleged use of excessive force during a search on April 11, 2009; and (2) a Section 1983 claim arising out of Deputy Goodwin's alleged use of excessive force during a search on May 14, 2009.

Defendants assert as an affirmative defense that Plaintiff failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.

Plaintiff asserts that he exhausted his administrative remedies in two ways: first, by filing a grievance form for each incident, and second, through a complaint that the American Civil Liberties Union (the "ACLU") submitted to Men's Central Jail on his behalf.

Defendants argue that Plaintiff did not exhaust in either way. First, Defendants argue that Plaintiff did not file a grievance form for each incident because it has no record of any such grievance form and because Plaintiff cannot produce the copies he once claimed to possess. Second, Defendants argue that the ACLU Complaint failed to exhaust because (1) substantively, it contained errors, and (2) procedurally, it did not comply with the prison's grievance process.

## II. FINDINGS OF FACT

### A. Facts Relating to Plaintiff's Section 1983 Claims

Plaintiff alleges that on April 11, 2009, while Deputy Graham conducted a cell search and searched his person, Deputy Graham asked Plaintiff to remove his hernia belt, asked him where his hernia was located, then dug his fingers into Plaintiff's hernia until Plaintiff cried out in pain.

Plaintiff also alleges that on May 14, 2009, while Deputy Goodwin conducted a cell search and searched Plaintiff's person, Deputy Goodwin slowly slid his hands

down Plaintiff's bare legs, squeezed and twisted Plaintiff's testicles, ran his finger down Plaintiff's buttocks, and penetrated Plaintiff's rectum with his finger.

**B. Facts Relating to Complaint Form**

The "County of Los Angeles Inmate Complaint / Service Request Form," effective in 2009, permitted an inmate to file a request to speak with personnel, to receive information, to receive documents and/or services, and to state a written request or complaint, including a complaint against staff.

The Complaint Form is in triplicate: the prisoner keeps the pink colored copy at the time of submission, the institution keeps the white copy, and the prisoner gets the yellow copy at the time of disposition.

Plaintiff testified that three days after the April 11, 2009 incident, he prepared a Complaint Form setting forth a grievance against Deputy Graham, and gave it to Deputy Patterson to place in the complaint box.

Plaintiff also testified that sometime in the middle of 2011, he prepared a Complaint Form setting forth a grievance against Deputy Goodwin for the May 14, 2009 incident, and gave it to Correctional Officer Mendoza to file for him. Transcript 78-80. Plaintiff also testified he gave this Complaint Form to Deputy Flanagan. Transcript 93-94.[1]

Plaintiff believed that none of the Jail personnel submitted his Complaint Forms as he asked them to.

Plaintiff testified that he kept the pink copy of each Complaint Form, and that he received the yellow copy of each after disposition. *See* Transcript 80-81.

Plaintiff testified, however, that he no longer has either the pink copy or the yellow copy for either Complaint Form because his legal papers were taken away from him during his incarceration and were not returned. *See* Transcript 81, 91, 94.

---

[1] It's not clear from the testimony whether Plaintiff claims to have submitted two Complaint Forms at two different times for the May 14, 2009 incident, but the Court finds it unnecessary to try to resolve this ambiguity.

3.

1    The Jail logs inmate grievances in the computerized "F.A.S.T. System." The F.A.S.T. System assigns statistical tracking numbers to inmate complaints. Once a complaint is logged, the hard copy Complaint Form is stamped with the words "INPUT-FAST" at the top and then the complaint is assigned to a supervisor to investigate and resolve within ten days.

The F.A.S.T. System is a tracking system; it does not include the hard-copy complaint itself. Rather, complaints are stored in hard copy in files at the Jail or at a storage facility.

An inmate could make a viable compliant even without using the Complaint Form. An inmate could write their complaint on anything and the Jail would accept it. The Jail does not reject complaints for any reason. Transcript p. 17.

The F.A.S.T. System lists 22 complaints filed by Plaintiff from 2009-2010. *See* Ex. p. 6. None of these 22 entries in the F.A.S.T. System correspond to Complaint Forms that Plaintiff claims to have submitted against Deputies Graham and Goodwin for the conduct underlying the claims in this case.

Furthermore, none of the hard copy Complaint Forms remaining in the County's records reflect a grievance against Deputies Graham and Goodwin for the conduct underlying the claims in this case.

**C. Facts Relating to Plaintiff's ACLU Complaint**

The ACLU sometimes submits grievances on behalf of inmates. The Jail investigates such third-party grievances in much the same way it investigates grievances submitted by inmates. Transcript 33-34.

The top of the Jail's "Inmate Complaint Disposition Data Form" has two options for categorizing the Complaint: "INMATE COMPLAINT," or "REFERRED THIRD PARTY COMPLAINT." *See* Ex. 23.

Plaintiff contacted the American Civil Liberties Union ("ACLU") and informed the ACLU that Defendants subjected him to excessive force.

On July 10, 2009, the ACLU submitted a complaint to Men's Central Jail on

4.

Plaintiff's behalf. The complaint was in the form of a declaration signed by Plaintiff. ("Declaration," or "ACLU Complaint," Ex. 23.)

In his Declaration, Plaintiff complained of a cell search on May 14, 2009, in which an unnamed deputy dug his finger into his hernia belt, causing pain. *See* Declaration ¶ 12. The allegations are substantially similar to those Plaintiff makes against Deputy Graham in this case. However, the date is different: in this case Plaintiff alleged this incident happened on April 11, 2009.

In his Declaration, Plaintiff complained of a search on about March 31, 2009, in which an unnamed deputy pushed his finger into his rectum. *See* Declaration ¶ 13. The allegations are similar to those Plaintiff makes against Deputy Goodwin in this case. However, the date is different: in this case Plaintiff alleged this incident happened on May 14, 2009.

After the Jail received Plaintiff's ACLU Complaint, it investigated Plaintiff's allegations. On April 20, 2010, as part of this investigation, Lieutenant Bornman and Sergeant Kehoe interviewed Plaintiff. *See* Interview Transcript (Ex. 7.)

During this interview, Sergeant Kehoe asked Plaintiff questions about both incidents. During the interview, Plaintiff described the incidents in greater detail than he did in his Declaration, and in a manner substantially similar to how he has described them in this action.

When asked to identify the "deputy . . . who hit your hernia," Plaintiff responded that it was Deputy Graham. Lieutenant Bornman then stated, "We can certainly look into that." *Id.* p. 38.

When asked who was the deputy who inserted his finder into Plaintiff's rectum, Plaintiff said it was Lyons, and not Villalobos, as he initially wrote. *Id.* p. 32.

Following this interview, the Jail issued a disposition in which it determined that Plaintiff's claims were "unfounded." The narrative position of the disposition states that Plaintiff "could not substantiate these claims with any actions or statements by deputy personnel. Further, based on Inmate Serrato's statements, deputies stopped

when Inmate Serrato stepped away or said something caused discomfort. It appears as though Inmate Serrato's allegations of misconduct are exaggerated and his allegations of misconduct during pat-down searches are unfounded." Disposition (Ex. 23) p. 5.

The disposition was signed by the Watch Commander on June 30, 2010, by the Unit Commander on June 30, 2010, and by the Division Chief on August 24, 2010. *See* Disposition p. 6.

Following this disposition, Plaintiff filed this action on January 22, 2013.

### III.   LEGAL STANDARD

The Prison Litigation Reform Act requires that a prisoner (including a pretrial detainee) refrain from filing a lawsuit concerning prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To exhaust his administrative remedies, a plaintiff must "comply . . . with the prison's own grievance procedures" and "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

Substantively, a grievance "suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (quoting *Griffin*, 557 F.3d at 1120). The grievance "need not include legal terminology or legal theories," because "[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Griffin*, 557 F.3d at 1120.

Furthermore, a prisoner's procedurally-flawed grievance may satisfy the exhaustion requirement when prison officials address the merits of a prisoner's grievance instead of enforcing a potential procedural bar. Under those circumstances, "the purposes of the PLRA exhaustion requirement have been fully served: prison officials have had a fair opportunity to correct any claimed deprivation and an administrative record supporting the prison's decision has been developed. []

6.

Dismissing the inmate's claim for failure to exhaust under these circumstances does not advance the statutory goal of avoiding unnecessary interference in prison administration. [] Rather, it prevents the courts from considering a claim that has already been fully vetted within the prison system." *Reyes v. Smith*, 810 F.3d 654, 658 (9th Cir. 2016) (citations omitted). Thus, "a prisoner exhausts 'such administrative remedies as are available,' 42 U.S.C. § 1997e(a), under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." *Reyes,* 810 F.3d at 659.

Because exhaustion is an affirmative defense, it is Defendants' burden to show that (1) there were administrative remedies available to Plaintiff, and (2) Plaintiff failed to exhaust those administrative remedies. Plaintiff need not make any affirmative showing that he exhausted his administrative remedies. *See Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc) ("[T]he defendant in a PLRA case must plead and prove nonexhaustion as an affirmative defense.").

The Court applies the preponderance of the evidence standard to its factual findings.

## IV.   CONCLUSIONS OF LAW

### A. Plaintiff <u>Did Not</u> Exhaust Administrative Remedies With Complaint Forms.

The Court finds that Plaintiff *did not* exhaust his administrative remedies by filing Complaint Forms.

First, it is undisputed that the Complaint Form was an administrative remedy available to Plaintiff.

Second, for the reasons stated below, the Court finds that Plaintiff did not exhaust the Complaint Form remedy.

Plaintiff testified that he kept the pink copy when he submitted the form, and

that he received a yellow copy.[2]

However, the Jail provides an inmate the yellow copy of a Complaint Form only *after* it renders a disposition of the Complaint.

If, as Plaintiff claims, he received the yellow copies, that necessarily implies that the Jail reached a disposition on his Complaint Forms. But, if the Jail had adjudicated Plaintiff's Complaint Forms as would be necessary to make Plaintiff's testimony true, these Complaint Forms would have been logged into the F.A.S.T. System. However, the F.A.S.T. System reflects no Complaint Forms filed by Plaintiff corresponding to each of the incidents alleged herein.

Although the hard copies of Complaint Forms can be misplaced, especially after so many years, the statistical data would be retained in the F.A.S.T. System, which is simply a computerized log of complaints. Because the F.A.S.T. System reflects neither Complaint Form, the Court concludes that in fact Plaintiff filed no such forms.

Thus, Plaintiff did not exhaust his administrative remedies by filing Complaint Forms.

### B. Plaintiff *Did* Exhaust Administrative Remedies Through His ACLU Complaint.

The Court finds that Plaintiff *did* exhaust his administrative remedies through his ACLU Complaint because the ACLU Complaint adequately apprised the Jail of the nature of the problem, and the Jail adjudicated the ACLU Complaint without objecting to any procedural defects.

The facts recited above pertaining to Plaintiff's ACLU Complaint are undisputed. The parties only dispute the legal effect of the ACLU Complaint: did it exhaust Plaintiff's administrative remedies?

---

[2] Plaintiff's explanation for why he does not have the pink and yellow copies makes some sense. However, in light of the Court's finding that Plaintiff did not in fact file those Complaint Forms, the Court will not assess that explanation.

Substantively, in his Declaration submitted by the ACLU and in the interview with Jail staff that followed, Plaintiff described both of the incidents giving rise to the claims in this case. Plaintiff identified Deputy Graham as being involved in the hernia incident.

Plaintiff's ACLU Complaint did have some substantive errors: Plaintiff appears to have slightly misstated the dates and did not identify Deputy Goodwin as being involved in the second incident and instead identified other deputies. However, identifying the exact dates of the incidents was not material to the investigation, nor was the correct identity of the deputy material to the disposition. Indeed, the disposition found that Plaintiff could not substantiate his claims with any actions or statements by the deputies, and that his claims were exaggerated. This investigation did not turn on the exact dates or identities of the deputies in question. A grievance "suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Sapp*, 623 F.3d at 824 (9th Cir.2010) (quoting *Griffin*, 557 F.3d at 1120). Defendants have not demonstrated that mistakes in the date or misidentifying the deputy undermined the purpose of the investigation or somehow prevented this claim from being sufficiently vetted. Plaintiff's ACLU Complaint, despite its errors, alerted the prison to the nature of the wrong, so it was substantively sufficient.

The Court also rejects Defendants' procedural argument: that Plaintiff's ACLU Complaint failed to exhaust because it was not the Jail's Complaint Form and thus failed to comply with the Jail's grievance procedures. The facts here fall squarely within the holding of *Reyes*: that "a prisoner exhausts 'such administrative remedies as are available,' 42 U.S.C. § 1997e(a), under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." *Reyes,* 810 F.3d at 659. Here, the Jail received Plaintiff's ACLU Complaint, investigated it, and issued a written disposition signed by three Jail officials. The Jail did not raise any procedural objections to the ACLU Complaint but instead dealt with

9.

it on the merits, which is consistent with the Jail's practice to investigate and adjudicate third-party complaints just as it does inmate complaints.

The Court therefore finds that Plaintiff's ACLU Complaint exhausted his administrative remedies as to both of his remaining claims.

Defendants therefore failed to establish that there were administrative remedies available to Plaintiff that Plaintiff failed to exhaust before filing this Section 1983 action. The Court therefore **ORDERS** that this case shall proceed to a jury trial on Plaintiff's Section 1983 claims.

**IT IS SO ORDERED.**

Dated: March 30, 2023

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE